Filed 12/12/14  P. v. Grant CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>DOUGLAS WESLEY GRANT,<br><br>　　　　Defendant and Appellant. | C073063<br><br>(Super. Ct. No. 12F01155) |

A jury convicted defendant Douglas Wesley Grant of possession of a controlled substance for sale and transportation of a controlled substance, and the trial court found true enhancement allegations that defendant had prior convictions within the meaning of Health and Safety Code section 11370.2, subdivision (a).[1]  The trial court sentenced

---

[1] Undesignated statutory references are to the Health and Safety Code.

defendant to an aggregate of 13 years in prison (four years for transportation of a controlled substance and nine years -- three years each-- for the prior conviction enhancements), to be served in county jail, with six years in custody and seven years under mandatory supervision.

Defendant now contends (1) his trial counsel rendered ineffective assistance by calling Lillian Viega as an expert witness, or in failing to adequately prepare her for testimony; (2) his trial counsel rendered ineffective assistance by failing to object when the prosecutor commented on the fact that defendant did not testify; and (3) the cumulative effect of defense counsel's errors rendered the trial fundamentally unfair.

We conclude defendant's trial counsel was not deficient in calling Viega as a witness (her testimony supported the defense case), and defendant has not established that counsel was deficient in preparing Viega to testify. In addition, defense counsel was not deficient in failing to object to the prosecutor's rebuttal argument because the prosecutor did not directly or indirectly refer to defendant's failure to testify. Accordingly, defendant's cumulative error claim also lacks merit.

We asked the parties to submit supplemental briefs on whether we should modify the judgment to reflect that, as to the prior conviction enhancements, defendant is sentenced to a consecutive term of nine years (three years each) pursuant to section 11370.2, subdivision (c), rather than subdivision (a), and whether we should direct the trial court to amend the abstract of judgment to reflect the judgment as modified and to correct the abstract of judgment to reflect the four-year sentence the trial court imposed on the count two conviction for transportation of a controlled substance. The parties agree the abstract of judgment should be corrected to reflect the oral pronouncement of judgment on count two. But defendant argues the prior conviction enhancements imposed under section 11370.2, subdivision (a) are unauthorized sentences that must be stricken, because subdivision (a) did not apply. We conclude the section 11370.2 enhancements are proper because defendant received sufficient notice

2

and there is no indication that the incorrect designation of the applicable subdivision caused defendant prejudice.

We will modify the judgment to reflect that defendant is sentenced to a consecutive term of nine years (three years each) pursuant to section 11370.2, subdivision (c), and we will affirm the judgment as modified. We will also direct the trial court to amend the abstract of judgment to reflect the judgment as modified and to correct the abstract of judgment to reflect the four-year sentence the trial court imposed on the count two conviction for transportation of a controlled substance.

BACKGROUND

Sacramento Police Officer Paul Fong stopped a car because it did not have a front license plate. The location of the traffic stop was a high narcotics trafficking area. Defendant was the driver and sole occupant. Officer Fong did not see defendant contact anyone prior to the stop. The parties stipulated that the stop and subsequent search of defendant and his car were lawful.

Officer Fong found a small Ziploc type baggie containing a white crystal substance wrapped in a green bandana in defendant's back pants pocket. The baggie contained 2.84 grams of methamphetamine. Officer Fong showed defendant the baggie and asked him what was in the baggie. Defendant slammed his forehead on the roof of his car and said, "[O]h, fuck, I forgot about those."

Officer Fong searched defendant's car. He found an organizer folder containing $600 in cash inside the glove box. The $600 consisted of a $100 bill and $20 and $10 bills. The officer also found a cell phone, but he was unable to retrieve any information from it.

Officer Fong transported defendant to jail after placing him under arrest. The officer informed defendant he would be subject to prosecution for taking drugs into the jail if he had additional drugs. Defendant answered, "[S]o what, do I need to give them to you now or what?" Defendant then removed from his sock a plastic baggie containing

3

0.9 grams of methamphetamine. He also produced a third baggie, containing 6.63 grams of methamphetamine, hidden in his underwear. Defendant had a total of 10.37 grams of methamphetamine. The methamphetamine had a street value of about $1,307. Defendant had $96 in cash in his front pants pocket. The $96 consisted of $20, $10, $5 and $1 bills.

Officer Fong had been a police officer for almost 10 years. He had made hundreds of arrests, including arrests for possession of methamphetamine. He had been trained on how to conduct narcotics investigations. He opined methamphetamine users typically had, on their person, a device with which they could use methamphetamine. Officer Fong did not find any device typically used to ingest methamphetamine, such as a pipe or syringe, on defendant's person or car. Officer Fong did not find packaging materials, a scale, or a pay-owe sheet, which were indicia of narcotics sales, in his search.

Officer Fong said the typical symptoms of methamphetamine use were missing or broken teeth, weight loss, a gaunt appearance, pock marks, and sores caused by scratching. He explained a person who had a "usable amount" of methamphetamine in their system will exhibit symptoms. The signs Officer Fong looked for to detect whether a person was under the influence of methamphetamine included the appearance of the eyes and constantly moving hands.

Officer Fong said defendant did not have any of the symptoms associated with methamphetamine use and did not appear to be under the influence of methamphetamine when he was arrested. Defendant "looked fairly healthy." His eyes appeared normal. He was calm. He was not jittery or fidgeting. He did not constantly move his hands. He was not sweating.

Sacramento Police Officer Darby Lannom testified as an expert on possession of methamphetamine for sale for the People. He said methamphetamine is sold in grams in Sacramento. One dosage unit of methamphetamine, which was the average amount an

4

average user would buy on the street or might use to get high, was one- to two-tenths of a gram. Ten point two (10.2) grams contained 51 to 102 dosage units.

Officer Lannom explained methamphetamine users were "dollar to dollar, day by day . . . one score to the next type of people." And a drug addict would be under the influence or show signs of being under the influence of drugs "pretty much all the time." He said being a drug addict was a full-time job, and a drug addict would do anything to get drugs into his system.

Officer Lannom said it was not typical for a methamphetamine user to carry 10.37 grams of methamphetamine. A person who bought 10 grams of drugs for personal use would be a very addicted drug user. Such a person would show signs of chronic methamphetamine use, be under the influence of methamphetamine, or have a method of using the methamphetamine right away. He said signs of drug use included weight loss, lack of personal hygiene, loss of teeth, open sores, and sweating. Officer Lannom said it was possible but not very probable that a person would buy 10 grams of methamphetamine and not intend to immediately use it all in a binge. He opined a drug user could not ration 10.37 grams of methamphetamine for multiple dosages. According to Officer Lannom, a person with 10.37 grams of methamphetamine and who did not have a way to ingest the methamphetamine was more likely a seller, not a user.

Officer Lannom said each baggie of methamphetamine found on defendant was a commonly sold amount on the street. He opined it was uncommon to find a user with three packages of methamphetamine where each package was a different but roughly sellable amount. Officer Lannom also said it was common for people who sold drugs to conceal their drugs in different places to decrease their risk of being robbed of all of their drugs. The officer further opined possessing $696 in cash, most of which was in small denominations, bolstered his opinion that the methamphetamine was possessed for sale.

Officer Lannom concluded, based on a hypothetical scenario containing facts mirroring those in this case and his experience as a police officer, the person in the

5

hypothetical scenario possessed methamphetamine for sale, rather than for personal use. The opinion was based on the amount of methamphetamine possessed, the absence of implements to ingest methamphetamine, the lack of signs of being under the influence of methamphetamine, the lack of signs of chronic methamphetamine use, the manner in which the methamphetamine was packaged and hidden in three different places on the person, and the possession of $696 in smaller denominations.

Defendant did not testify. The defense theory was that defendant was a methamphetamine user, not a methamphetamine seller. His trial counsel called Viega as an expert witness on substance abuse issues. Viega was a drug addiction counselor. Prior to her career as a counselor, Viega was addicted to heroin and methamphetamine and was around others who used methamphetamine. She committed crimes to support her addiction. Viega had prior convictions for possession of a controlled substance for sale, possession or purchase of a controlled substance for sale, grand theft, petty theft, and forgery.

Viega said she had seen methamphetamine users with more than 10 grams of methamphetamine on their person. When she used methamphetamine, she personally had more than 10 grams of methamphetamine on her for her personal use. Viega bought more methamphetamine than she could use at one time when she knew a particular source provided good quality methamphetamine. Viega said depending on the quality of the product, some people used two or three grams of methamphetamine a day. When she used only methamphetamine, she injected two to three grams of methamphetamine a day.

Viega said that when she bought methamphetamine in larger amounts, she broke it up into two or three quantities. It was not uncommon for her to have different baggies of methamphetamine on her person. She said this was related to paranoia caused by methamphetamine use.

Viega used methamphetamine immediately after she bought it. But she did not carry a device to use methamphetamine and had seen other methamphetamine users who did not have a pipe on their person all the time.

Viega explained that heavy drug users usually had teeth problems, missing teeth, "pick marks" and scarring on their faces, arms and legs; they also had sunken cheeks, gray skin tone and they appeared very thin and unhealthy. When she was using methamphetamine, Viega was very skinny and her hair was unhealthy and thin. She was always under the influence of methamphetamine, except when she was incarcerated. Viega agreed someone who was a heavy user, i.e., using two grams a day, would have signs of that heavy use in all aspects of life. She agreed when someone was under the influence of methamphetamine, their eyes looked different, and they constantly touched things and moved their hands. But Viega had seen methamphetamine users who did not exhibit any of the typical symptoms of methamphetamine use. In her experience as a counselor, she met methamphetamine users who worked and maintained "somewhat of a normal life." According to Viega, a person could test positive for methamphetamine but not exhibit any symptoms.

Additional facts are included in the discussion as relevant to the contentions on appeal.

The jury convicted defendant of possession of a controlled substance for sale (§ 11378 -- count one) and transportation of a controlled substance (§ 11379, subd. (a) -- count two). In bifurcated proceedings, the trial court found true certain enhancement allegations. (§ 11370.2; Pen. Code, § 667.5, subd. (b).)

The trial court sentenced defendant to an aggregate of 13 years in prison, to be served in county jail, consisting of the following: the upper term of four years for transportation of a controlled substance; the upper term of three years, stayed, for possession of a controlled substance for sale; a three-year consecutive term for each of the three section 11370.2 priors; and a stayed one-year term for each Penal Code

7

section 667.5 prison prior. Pursuant to Penal Code section 1170, subdivision (h)(5)(B), defendant was to serve six years in custody and seven years under mandatory supervision.

DISCUSSION

I

Defendant contends his trial counsel was ineffective because she called Viega as an expert witness or, in the alternative, failed to adequately prepare Viega to testify.

To establish a claim of ineffective assistance of counsel, defendant must prove that (1) trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficiency resulted in prejudice to defendant. (*People v. Maury* (2003) 30 Cal.4th 342, 389; *Strickland v. Washington* (1984) 466 U.S. 668, 686-687 [80 L.Ed.2d 674, 692-693].) If defendant makes an insufficient showing on either one of these components, his ineffective assistance claim fails. (*People v. Holt* (1997) 15 Cal.4th 619, 703; *Strickland v. Washington*, *supra*, 466 U.S. at p. 687 [80 L.Ed.2d at p. 693].)

The Supreme Court recently observed, "It is particularly difficult to prevail on an appellate claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009, italics omitted.)

A

The decision to call a witness is a matter of trial tactics, unless the decision results from unreasonable failure to investigate. (*People v. Bolin* (1998) 18 Cal.4th 297, 334.) " ' "Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a 'strong presumption

8

that counsel's conduct falls within the wide range of reasonable professional assistance.' " [Citation.] . . . "[C]ourts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight" [citation]. "Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts." [Citation.]' " (*People v. Stanley* (2006) 39 Cal.4th 913, 954.)

The prosecutor retained a narcotics expert to opine that defendant possessed methamphetamine for the purpose of sale. Viega provided testimony controverting the opinion of the People's narcotics expert. The defense theory was that defendant was a methamphetamine user, not a methamphetamine seller. Defense counsel relied on Viega's testimony to argue that defendant's circumstances did not automatically indicate intent to sell methamphetamine, and that the jury could reasonably infer defendant was a methamphetamine user based on the evidence. Defense counsel said the jury should give Viega's testimony more weight than Officer Lannom's testimony because Viega had personal knowledge about methamphetamine use and she currently counseled methamphetamine addicts. In comparison, Officer Lannom's knowledge came from people he contacted as a police officer, his viewpoint was biased, and he could not describe an average methamphetamine user.

Defendant says Viega should have testified that a methamphetamine user would not necessarily look underweight and gaunt or have missing teeth or open sores, and a methamphetamine user who had 10 grams of methamphetamine on his person would not necessarily be under the influence of methamphetamine. But the fact that defendant wishes his witness had said something different does not necessarily establish ineffective assistance. Viega made various statements helpful to defendant, such as that some methamphetamine users did not exhibit the typical symptoms of methamphetamine use and a person could test positive for methamphetamine but not exhibit any symptoms. She also told the jury some methamphetamine users take a break from using methamphetamine; they go to sleep, eat, and rest up and a couple of days later figure out

9

how they can get money to buy more methamphetamine. Viega's testimony supported defense counsel's argument.

In addition, defendant claims Viega should have testified that a methamphetamine user could possess more than 10 grams of methamphetamine for personal use. But Viega did say that. Her testimony supported defense counsel's argument that possession of 10.37 grams of methamphetamine did not necessarily indicate intent to sell.

Defendant says Viega should have testified that a methamphetamine user could carry large amounts of cash and methamphetamine. Viega provided such testimony. She said there was a time when she was not trying to sell drugs, when she had "large amounts" of both money and drugs.

Given the defense theory, we cannot say that defense counsel was deficient in calling Viega as a defense narcotics expert.

B

We turn next to defendant's alternative claim that his defense counsel did not adequately prepare Viega for trial.

Defense counsel retained Viega five days before the first day of trial, when the first narcotics expert defense counsel retained had a family emergency and did not return to California by the continued trial date. Defense counsel obtained Viega's name from the expert list of the Sacramento County Office of the Public Defender. Defense counsel spoke with Viega prior to Viega's testimony. And defense counsel was able to make an offer of proof as to Viega's trial testimony.

The record does not show what steps defense counsel took to prepare Viega for her trial testimony, or that her testimony would have been different had there been greater preparation. The fact that Viega's testimony was not entirely favorable does not establish that defense counsel was deficient. (*People v. Williams* (1997) 16 Cal.4th 153, 263 [no amount of preparation can make a witness impervious to effective cross-examination]; *People v. Gates* (1987) 43 Cal.3d 1168, 1213-1214 ["It is not uncommon for even the

10

most carefully prepared witness to give an occasional surprise answer"], disapproved an another point in *People v. Williams* (2010) 49 Cal.4th 405, 459 .)  Defendant has not established that defense counsel was deficient in preparing Viega to testify.  (*People v. Bolin, supra,* 18 Cal.4th at p. 333 [rejecting claim that counsel was ineffective in failing to anticipate witness's testimony in part because defendant did not establish additional investigation would have produced favorable evidence]; *People v. Hines* (1997) 15 Cal.4th 997, 1032; *People v. Williams, supra,* 16 Cal.4th at p. 263 [noting that even assuming trial counsel had not fully prepared every witness, the record did not suggest that any witness's testimony would have been different had that witness been prepared in the manner the defendant suggested].)

Defendant asserts, without analysis, that it is reasonably probable he would not have been convicted if his trial counsel was not ineffective in preparing Viega for trial. We need not discuss claims asserted in a perfunctory manner.  (*People v. Freeman* (1994) 8 Cal.4th 450, 482, fn. 2; *People v. Galambos* (2002) 104 Cal.App.4th 1147, 1159 [claim not supported by citations and analysis is forfeited].)

II

Defendant also contends his trial counsel was ineffective in failing to object when the prosecutor commented on the fact that defendant did not testify.

Defendant claims the prosecutor violated *Griffin v. California* (1965) 380 U.S. 609 [14 L.Ed.2d 106] (*Griffin*).  He acknowledges that his trial counsel's failure to object to the asserted *Griffin* error in the trial court forfeits a prosecutorial misconduct claim.  In general, a defendant must make a timely objection and request a curative admonition in order to preserve a claim of prosecutorial misconduct for appellate review.  (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1275.)  Defense counsel did not object to the alleged misconduct by the prosecutor or request a curative admonition from the trial court.  That failure forfeits defendant's claim the prosecutor committed misconduct by violating *Griffin*.  (*People v. Turner* (2004) 34 Cal.4th 406, 421.)  Defendant, nevertheless, claims

11

his trial counsel's failure to object to the prosecutor's comments was ineffective assistance.

Defendant's trial counsel argued, among other things, that defendant was a methamphetamine user, he possessed the methamphetamine for personal use, some people dealt only in cash, there was no evidence defendant did not work or have money, he could have had methamphetamine in his system but not show symptoms, and there were no scales, pay-owe sheets, or packing materials. In addition, referring to Viega's testimony, defense counsel argued it was not uncommon for a methamphetamine user to have 10 grams of methamphetamine, not all methamphetamine users exhibited the same symptoms, and some did not carry paraphernalia or use the methamphetamine immediately.

In her rebuttal argument, the prosecutor said it was not reasonable to conclude that a user possessed 10 grams of methamphetamine strictly for personal use; even if the symptoms of methamphetamine use differ, a heavy methamphetamine user would show some sign of addiction and there was no evidence defendant was a methamphetamine addict or user.

The prosecutor said defense counsel talked about holding the People to its burden beyond a reasonable doubt and not letting the People shift that burden. The prosecutor then said: "She's right. The People do have the burden in this case. [¶] However, just because the defense does not have the duty or an obligation to put on any evidence, does that mean that they somehow cannot or are forbidden to? No. Not at all. Not at all. They have just as much right, the subpoena power, the ability to call witnesses, the ability to bring people in here and present evidence and have them testify and give you evidence and factual information to make a determination. They have that ability. [¶] You know, if there was some witness somewhere who could give us some other explanation, either as to the defendant's drug use or as to an explanation for the presence of all that money,

12

almost $700 in cash, they have the ability to call that person. There's no -- you know, they're not forbade from doing so."

A prosecutor may not directly or indirectly comment on defendant's failure to testify. (*People v. Hovey* (1988) 44 Cal.3d 543, 572; *Griffin, supra,* 380 U.S. at p. 615 [14 L.Ed.2d at p. 110].) Thus, she may not refer to the absence of evidence that only defendant's statement or testimony could provide. (*People v. Hughes* (2002) 27 Cal.4th 287, 372; *People v. Bruce G.* (2002) 97 Cal.App.4th 1233, 1244.) But a prosecutor may comment on the state of the evidence or defendant's failure to introduce material evidence or call logical witnesses. (*People v. Hovey, supra,* 44 Cal.3d at p. 572; *People v. Gonzales, supra,* 54 Cal.4th at p. 1275.) And where witnesses other than defendant could contradict the prosecution's evidence, it is permissible for the prosecutor to refer to the absence of evidence. (See *People v. Johnson* (1992) 3 Cal.4th 1183, 1229 [defendant claimed he was not at the crime scene but presented no alibi evidence to support the contention].)

The remarks to which defendant objects are similar to those in *People v. Cornwell* (2005) 37 Cal.4th 50, 90-91, disapproved on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, footnote 22, and *People v. Morris* (1988) 46 Cal.3d 1, 35-36, disapproved on other grounds by *In re Sassounian* (1995) 9 Cal.4th 535, 543, footnote 5. In both cases there was no *Griffin* error. Here, defense counsel argued there were reasonable explanations for the evidence, and those explanations did not point to intent to sell methamphetamine. The prosecutor responded, in general terms, that there was no evidence of "some other explanation." The prosecutor did not refer, directly or indirectly, to defendant's failure to testify.

Defendant acknowledges he was not the only witness who could have testified he was a methamphetamine addict. He argues, however, only he could testify about topics such as the extent of his drug habit, why he possessed the methamphetamine and cash,

13

his intentions, and why he carried separate hidden baggies. Nonetheless, Viega testified about many aspects of methamphetamine use.

The prosecutor's statements did not violate *Griffin* because it is not reasonably likely the jury could have understood the challenged comments to refer to defendant's failure to testify. (*People v. Clair* (1992) 2 Cal.4th 629, 663 [describing standard for examining whether comment violates *Griffin*].) Defense counsel is not ineffective for failing to object to the challenged remarks when the prosecutor did not engage in misconduct. (*People v. Medina* (1995) 11 Cal.4th 694, 756.)

Even if the prosecutor's comments constituted *Griffin* error and defense counsel was deficient in failing to object to the prosecutor's statements, it is not reasonably probable that, but for defense counsel's omission, defendant would have obtained a more favorable result. (*People v. Mesa* (2006) 144 Cal.App.4th 1000, 1008-1009 [we apply the *Strickland v. Washington, supra*, 466 U.S. 668 [80 L.Ed.2d 674] "reasonable probability" standard to evaluate an ineffective assistance of counsel claim even when defense counsel's alleged error involves the failure to preserve the defendant's constitutional rights].) There is compelling evidence of defendant's guilt. Even if the challenged statements are a reference to defendant's failure to testify, the reference is indirect and brief.

In addition, the trial court instructed the jury that defendant had an absolute constitutional right not to testify, that the jury must not consider the fact that defendant did not testify, that neither side is required to call witnesses who may have information about the case or to produce all physical evidence that may have relevance, and that nothing the attorneys said was evidence. We presume the jury followed those instructions. (*People v. Boyette* (2002) 29 Cal.4th 381, 448.) Under the circumstances, there was no prejudicial error by defendant's trial counsel.

14

## III

Defendant argues the cumulative effect of his trial counsel's errors in failing to adequately prepare Viega for trial or in calling Viega as a witness and in failing to object to *Griffin* error rendered his trial fundamentally unfair. Having concluded there is no prejudicial error, this claim lacks merit.

## IV

We asked the parties to submit supplemental briefs on whether we should modify the judgment to reflect that, as to the prior conviction enhancements, defendant is sentenced to a consecutive term of nine years (three years each) pursuant to section 11370.2, subdivision (c), rather than subdivision (a), and whether we should direct the trial court to amend the abstract of judgment to reflect the judgment as modified and to correct the abstract of judgment to reflect the four-year sentence the trial court imposed on the count two conviction for transportation of a controlled substance.

## A

The parties agree section 11370.2, subdivision (a) does not apply because defendant was not convicted of any statute listed in subdivision (a). The Attorney General notes that subdivision (c) is the applicable statute. We agree with the parties. Section 11370.2, subdivision (a) applies where a defendant is convicted of violating or conspiring to violate section 11351, 11351.5 or 11352. Section 11370.2, subdivision (c) applies where a defendant is convicted of violating or conspiring to violate section 11378 or 11379. In this case defendant was convicted of violating sections 11378 and 11379.

The parties disagree, however, on whether modification of the judgment is appropriate. Defendant argues the three-year enhancements imposed under subdivision (a) must be stricken as unauthorized sentences. The Attorney General disagrees, urging us to modify the judgment. We agree with the Attorney General. Reference to the wrong subdivision is not fatal to the imposition of a sentencing enhancement if the information put the defendant on notice that a sentence enhancement

15

would be sought, notified him of the facts supporting the enhancement, and there is no showing that the defendant was misled to his prejudice.  (*People v. Neal* (1984) 159 Cal.App.3d 69, 73.)

Here, defendant had sufficient notice and there is no indication of prejudice. Defendant was charged with possession of a controlled substance for sale (§ 11378 -- count one) and transportation of a controlled substance (§ 11379, subd. (a) -- count two). Although the amended information cited the wrong subdivision, it informed defendant the prosecution would seek enhancements under section 11370.2 because defendant suffered three prior section 11378 convictions.  Under section 11370.2, subdivision (c), as under subdivision (a), defendant could receive, in addition to any other punishment authorized by law, a consecutive three-year term for each qualifying prior felony conviction.  The probation report also cited the wrong subdivision, but it recommended a nine-year sentence under section 11370.2.  Defense counsel acknowledged at the sentencing hearing the trial court could impose three-year sentences on each of defendant's prior drug sales convictions.  Defendant does not claim he would have prepared his case differently if the amended information cited subdivision (c) instead of subdivision (a), nor does he claim he did not receive notice he was subject to enhanced punishment under section 11370.2 if the jury convicted him on counts one and two and the allegations that he had prior convictions for violating section 11378 were found true.

We conclude the section 11370.2 enhancement sentences are valid because defendant received sufficient notice and there is no indication of prejudice.  (*People v. Neal, supra,* 159 Cal.App.3d at pp. 72-74.)  We will modify the judgment to reflect that defendant is sentenced to a consecutive term of nine years (three years each) pursuant to section 11370.2, subdivision (c), and we will affirm the judgment as modified.  The modification reflects the applicable subdivision and does not change the length of the sentence imposed because both section 11370.2, subdivisions (a) and (c) provide for

16

additional punishment of a full, separate, and consecutive three-year term for each qualifying prior felony conviction. (§ 11370.2, subds. (a), (c).)

B

The parties agree the abstract of judgment should be corrected to reflect the oral pronouncement of judgment on count two. Although the trial court orally imposed a four-year sentence on the count two conviction for transportation of a controlled substance, the abstract of judgment incorrectly references a three-year sentence on count two. We will direct the trial court to correct the abstract of judgment to reflect the four-year sentence the trial court imposed on the count two conviction for transportation of a controlled substance.

DISPOSITION

The judgment is modified to reflect that defendant is sentenced to a consecutive term of nine years (three years each) pursuant to section 11370.2, subdivision (c). The judgment is affirmed as modified. The trial court is directed to amend the abstract of judgment to reflect the judgment as modified and to correct the abstract of judgment to reflect the four-year sentence the trial court imposed on the count two conviction for transportation of a controlled substance. The trial court shall forward a certified copy of the amended and corrected abstract of judgment to the Department of Corrections and Rehabilitation.

                                       MAURO            , J.


We concur:


          BLEASE         , Acting P. J.


          ROBIE         , J.